Argued at Pendleton May 7, affirmed July 11, rehearing denied October 2, 1928.

# THE FARMERS' BANK OF WESTON *v.* W. H. ELLIS ET AL.

(268 Pac. 1009.)

For appellants there was a brief over the name of *Messrs. Nichols, Hallock & Donald,* with an oral argument by *Mr. James T. Donald.*

For respondent there was a brief over the names of *Mr. Wm. Smith* and *Mr. James A. Fee,* with an oral argument by Mr. Smith.

COSHOW, J. — ■ The disposition of the motion to strike disposes of practically all of the material issues presented on this appeal. Plaintiff claims that the further and separate answers and defenses are immaterial and irrelevant because by the former decision in this case defendants are precluded from making the defenses attempted by their answers. Motion to strike is the proper method of testing an answer on the ground that the allegations moved against are immaterial or irrelevant: *Hubbard* v. *Olsen-Roe Transfer Co.,* 110 Or. 618 (224 Pac. 636).

■ It was determined in the former decision that the warehouse receipts involved are negotiable in the full sense of the word. By that decision this court is bound to strictly uphold the law as written. The

law is the Uniform Warehouse Act adopted by most of the states of the Union. Defendants do not claim to have even demanded the receipts from plaintiff or from said Grafton. They shipped the potatoes upon the verbal request of said Grafton, who had negotiated the receipts to plaintiff. The law requires that either the receipts must be taken up or the warehouseman must have written authority of the owner or holder of the receipts before parting with possession of the goods. That plaintiff was the holder and owner of the receipts at the time the potatoes were shipped is not disputed. The substance of the first further and affirmative defense in defendants' answer is that an assignment of all of the money due or to become due from a firm with whom said Grafton was dealing to the bank was a written ratification of the unauthorized act of Grafton in demanding the potatoes. Defendants cannot avail themselves of such a defense, if it is a defense at all. The contractual relations between plaintiff and said Grafton are both immaterial and irrelevant in this action. Plaintiff held the warehouse receipts as security for money loaned to Grafton. The law required defendants not to ship the potatoes nor to deliver them to anyone without taking up the receipts or seeing that they were canceled or without written authority from the holder of the receipts. Defendants did neither, and according to the testimony of one of the defendants made no attempt so to do. By shipping the potatoes without complying with the law they assumed the risk of any loss that might result. Public policy requires the strict enforcement of the law in order to prevent loss falling upon innocent owners of property deposited in public warehouses. The purpose of the law was to protect the owners

of property deposited in public warehouses. As was well said in effect by the writer of the majority opinion in the former hearing of this case, to permit warehouseman to ship goods beyond the state without complying with the law is to render the statute nugatory. We believe the former opinion controls and is the law of this case. In the face of the testimony of Harry Ellis defendants are left without defense for having delivered the potatoes without the receipts or written authority required by law. He testified that he had received no communication from plaintiff and did not know where the receipts were until after the potatoes were shipped. He also testified that he did not take up the receipts and did not have the assent of the bank of Weston at the time he shipped the potatoes. There is no pretense that any fraud was practiced on defendants. Many of the authorities relied upon by defendants are cases wherein fraud was involved. Fraud vitiates all contracts. Defendants do not attempt to set up fraud as a defense.

■ The assignment relied on by defendants is not evidence of ratification of Grafton's conduct in withdrawing the potatoes from defendants' warehouse. That assignment does not mention the receipts involved. It does not refer to those receipts. It does not refer to the transaction between said Grafton and defendants or plaintiff and defendants. The assignment of any and all sums due said Grafton from F. M. Balcom Company is no authority to defendants to deliver up the potatoes without the receipts or written authority prescribed by statute.

■ Defendants in their answer to the second amended complaint denied generally all the allegations thereof, except as in said answer admitted,

alleged or modified. The further and separate answers having been stricken, some question is raised about the effect of the denials. It is doubtful whether the denials amount to absolute denials, however, in the Circuit Court the trial proceeded as though the allegations of the complaint were denied. The denials included the corporate capacity of plaintiff. Defendants now claim that, plaintiff having failed to prove one of the material allegations of its complaint, they were entitled to a judgment of nonsuit which was duly made at the close of taking plaintiff's testimony, and was followed with a motion for a directed verdict at the close of all of the testimony. The only evidence of the corporate capacity of the plaintiff was the testimony of the witness Kellough, cashier of plaintiff bank, who testified that plaintiff was a state corporation. This answer was made without objection, and defendant now insists that the statutory method of proving the corporate capacity was by introducing certified copy: *Multorpor Co.* v. *Reed,* 122 Or. 605, 612 (260 Pac. 203). If the corporate capacity of plaintiff were in any way involved, defendants' position would be sustained. It is here presented as the flimsiest technicality. It is not material to defendants' defense to have determined the capacity in which plaintiff is doing business. Its ownership and possession of the warehouse receipts is not questioned. It would have been the duty of the trial court to have entertained testimony after the motion for nonsuit was made to establish the corporate capacity of the plaintiff, if there had been any reason at all why the corporation of the plaintiff should have been formally proved. On the issue framed the capacity in which the plaintiff was doing business was immaterial to defendants. The testi-

mony of Kellough was some evidence of the incorporation of plaintiff. That evidence was not denied. Defendants set up affirmative defenses thus recognizing the entity of plaintiff. These defenses are tantamount to an admission of plaintiff's capacity to sue: *Hartford Ins. Co.* v. *Central R. R. of Oregon*, 74 Or. 144, 150 (144 Pac. 417).

■ Defendants also complain because the court instructed the jury that in any event it must return a verdict for plaintiff in the sum of $1,357.01. This sum is admitted in the further and separate answer as the net proceeds from the sale of the potatoes represented by the two warehouse receipts. But that further and separate answer was stricken out on motion of plaintiff. It appears clearly from the record otherwise that that amount was actually received. Defendants were not injured, therefore. All that would have been necessary to establish that matter would have been to introduce the further and separate answers in evidence as a part of plaintiff's testimony. The amount of the net receipts is not in dispute. If it was error at all it was harmless.

■ Defendants also complain because the court instructed the jury that the measure of damages of plaintiff's loss was the market value at Baker City where the potatoes were stored. It is elementary law that in actions for conversion, which this is, the measure of damages is the market value of the goods converted at the place and time of the conversion. The jury was accordingly instructed in effect that it should return a verdict for the market value of the potatoes at Baker City in May, 1926, when the potatoes were shipped. It is claimed by defendants that this is inconsistent with the instructions to the effect that the jury must return a verdict for at least

$1,357.01. But the instructions are not inconsistent. The instructions properly state the law. The minimum amount was stated in the instructions to the jury because the defendants admit the potatoes were of that value and plaintiff was entitled to have its claims to a greater value presented to the jury. In any event defendants suffered no harm from the instructions because the jury returned a verdict for the minimum amount.

Other instructions complained of have been carefully examined. The requested instructions have also been carefully considered. The errors assigned on those accounts are not well taken. The charge given to the jury was complete, fair and pertinent. Under the pleadings the instructions as a whole are unobjectionable. The judgment is affirmed.

AFFIRMED. REHEARING DENIED.

RAND, C. J., and BEAN and ROSSMAN, JJ., concur.