Argued February 17; reversed March 15, 1932

# BANK OF CALIFORNIA NATIONAL ASSOCIA-
# TION *v.* SCHMALTZ ET AL.
### (9 P. (2d) 112)

Thos. G. Greene, of Portland (Carson & Carson, of Salem, on the brief), for appellant.

Custer E. Ross, of Salem, for respondents.

BELT, J. This is an action to recover damages for the conversion of 124 bales of hops stored with the defendants who were operating a warehouse at Mount Angel, Oregon, under the firm name of N. Schmaltz & Sons. There is no question about the storage of the hops or the issuance of the three warehouse receipts upon which this action is predicated. Neither is there any question as to the endorsement of these receipts to the plaintiff bank by Frank S. Johnson, to secure loans made to him by the bank. The first receipt was issued on October 8, 1927, to Peter Olson, covering 25 bales of hops. Olson sold these hops to Frank S. John-

son and endorsed the receipt to him. The second receipt was issued on April 4, 1928, to Frank S. Johnson for 32 bales, and the third receipt on the following day to Johnson for 67 bales of hops. On April 7, 1928, the bank advised the defendants by letter that it held the receipts issued to Johnson as collateral security for loans and that deliveries of hops should be made "only against surrender of receipts or on our written consent prior to delivery." The defendants returned this letter to the plaintiff with the following notation thereon: "We acknowledge receipt of the above instruction and will conform thereto." In April, 1929, the bank presented the warehouse receipts to defendants, offered to pay storage charges and made demand for delivery of the hops. The defendants were unable to comply with this demand for the reason that soon after the hops were stored they were delivered to Frank S. Johnson under the alleged belief that he was the owner of the same. At the time these hops were delivered to Johnson, he was not in possession of the warehouse receipts nor did he have any written authority from the bank to act as its agent. Defendants admit the delivery of the hops to Johnson, with the exception of two bales which they assert are now held in storage. They allege that the bank failed to make any offer to pay the storage on the two bales at the time of the presentation of the receipts. The bank denies that any mention was made of these two bales and state that defendants advised that Johnson had paid the full storage charges on the hops. It is undisputed that Johnson owned the hops represented by the three receipts; that he transferred the receipts to the bank for value; that defendants delivered the hops to Johnson (or as defendants contend all except two bales) without taking up the receipts and without written

authority from the bank, and that the storage charges thereon had been paid when the bank made demand for the hops. The cause was submitted to a jury and a verdict returned in favor of the defendants. From the judgment entered thereon the plaintiff appeals.

Aside from the question of the two bales of hops which defendants assert they now hold in storage—and the question of election of remedies which will be considered later—it is clear that plaintiff has, in the light of the undisputed evidence, established its cause in conversion (*Farmers' Bank of Weston v. Ellis*, 126 Or. 602 (268 P. 1009); 27 R. C. L. 1000), and that there was only one issue to submit to the jury, namely, the reasonable market value of the hops at the time and place of the alleged conversion. Indeed, the trial court correctly instructed the jury that "By delivering the hops to Johnson without requiring surrender of the receipts or a written authorization of plaintiff, defendants were guilty of conversion and thereby became and are now liable to plaintiff for the reasonable market value of said hops at Mount Angel at the time of said wrongful delivery to Johnson." Since there was some evidence tending to show the value of the hops converted it logically follows that the verdict must necessarily have been in favor of the plaintiff in some amount. Even under the theory of the trial court there was no question about the conversion of 122 bales of hops.

In our opinion there was no issue to submit to the jury relative to the two bales of hops. When the negotiable warehouse receipts were endorsed to the bank for value it had a right to believe that the number of bales of hops as specified in the receipts were on storage with the defendants. If, in fact, the defendants

had delivered only a part of the hops, it would have been incumbent upon them to make a statement upon the receipts showing the number of bales delivered. Upon their failure so to do, they would be liable for the entire number of bales stored, to one who, in good faith and for value, had acquired title to the receipts: Section 71-211, Oregon Code 1930. When the defendants exercised dominion and ownership over the hops inconsistent with the rights of the true owner, by delivering a portion of the hops to a person not entitled to the same, such act amounted to a conversion of the entire number of bales represented by the receipts. Upon presentation of these receipts to the warehouseman, the owner was entitled to the identical property stored and the warehouseman cannot fulfill his obligation under the contract by partial performance.

It is clear that the warehouse receipts issued by the defendants were negotiable. They contained all of the statutory requirements with the exception that they were not consecutively numbered, and state that the hops will be delivered to the person named therein or his order. Section 71-204, Oregon Code 1930, provides that ''a receipt in which it is stated that the goods received will be delivered to the bearer, or to the order of any person named in such receipt, is a negotiable receipt.'' The words ''non-negotiable'' or ''not negotiable'' do not appear upon any of the receipts: See section 71-206, Oregon Code 1930. The provision that the defendants would not be responsible for their own negligence in the operation of the warehouse is void in that it is contrary to section 71-202, Oregon Code 1930, which prohibits a warehouseman from impairing his obligation ''to exercise that degree of care in the safe-

keeping of the goods entrusted to him which a reasonably careful man would exercise in regard to goods of his own."

▆▆▆ Assuming that plaintiff is not estopped from prosecuting this action, it was error for the trial court to refuse the following requested instructions of the plaintiff: (1) "You are instructed that no lawful excuse for failure to deliver said hops to plaintiff has been proved and, therefore, the plaintiff is entitled to recover in this case," and (2) "The only question for your consideration is the amount of plaintiff's damages. The measure of such damages, as I have said, is the reasonable market value of hops of the same or similar quality at Mt. Angel at the time of the conversion of the hops which is the time or times when the same were wrongfully delivered to Johnson."

▆ Plaintiff also predicates error of the trial court in remarking in the presence and hearing of the jury that "There isn't any allegation of bad faith in the pleadings that I recall, they are here on strictly legal and not moral grounds." This comment came after objection of the plaintiff following the question, "Now, Mr. Schmaltz, when you made these various deliveries of these hops to Frank Johnson, like you have testified to did you believe that Mr. Johnson had a right to receive them?" It is clear from examination of the record that this statement was directed to the cause of the plaintiff and it is obvious that it was highly prejudicial. Further comment would serve no good purpose. The objection to the question should have been sustained. The motive of the defendants was immaterial: Bowers Law of Conversion, § 608. Plaintiff did not ask for punitive damages.

The serious question in the case is whether the plaintiff is estopped from maintaining this action by

reason of an alleged election of one of two inconsistent remedies. Counsel for defendants assert that, regardless of any errors that were made in the trial, there could have been only one legal result, namely a judgment for the defendant by reason of the bar of estoppel. This contention requires a somewhat extended examination of the pleadings. In paragraph VII of the original complaint it is alleged:

"That on or about the 15th day of April 1929 plaintiff presented said warehouse receipts with the indorsements thereon to the defendants and offered to surrender the same and satisfy whatever lien defendants might have thereon and demanded said hops; that defendants failed and refused to deliver the same for the reason that on or about the 1st of June, 1928, they had shipped and delivered the same to said Frank S. Johnson."

"Paragraph VIII.

"That at the time of the conversion of said hops as aforesaid the market value thereof at Mt. Angel, Oregon, was 20 cents per pound."

"Paragraph IX.

"That by reason of the unlawful conversion of said 23932 pounds of hops by defendants as aforesaid plaintiff has been and is damaged in the sum of $4,786.40."

Upon the filing of this complaint on June 15, 1929, plaintiff caused a writ of attachment to issue and certain real property of the defendant, N. Schmaltz, was attached. On June 17, 1929, plaintiff filed an amended complaint which, in addition to the allegations of the original complaint, contained the following allegation: "That on said 1st day of June, 1928, defendants became and were indebted to plaintiff in the sum of $4,786.40 as for money had and received by defend-

ants upon said day for the use and benefit of plaintiff.'' Defendants moved against the amended complaint (1) to make it more definite and certain by setting forth the receipts issued and (2) to strike the complaint because it had three causes of action not separately pleaded. This motion was confessed and plaintiff filed a second amended complaint in which was included the allegations with reference to conversion and also those for money had and received. Defendants moved to strike the allegations relative to conversion in the three causes of action separately pleaded. Whereupon counsel for the plaintiff obtained permission of the court and consent. of counsel for defendants that the second amended complaint be amended by interlineation, by deletion of the words, ''as for money had and received.'' The attachment, on motion of the plaintiff, was dissolved.

 Under this state of the record can it be said that plaintiff should be estopped from proceeding in tort? Where a warehouseman has converted property held in storage, the owner may waive the tort and sue upon an implied contract, but these two remedies are inconsistent. An election of one of two such inconsistent remedies is a bar to the other. In this jurisdiction it seems to be well settled that an election is made by the commencement of the action. In other words, this is considered such a decisive step in the selection of the remedy that the party will not thereafter be heard to assert one which is inconsistent therewith: *Oregon Mill & Grain Co. v. Hyde,* 87 Or. 163 (169 P. 791) ; *Fletcher v. Southern Oregon Truck Co.,* 132 Or. 338 (285 P. 813). The original complaint plainly sounded in tort. Here it was that the election was made. The mere fact that plaintiff improperly caused a writ of attachment to issue would not change the character of the pleading,

although it would afford basis for argument that the pleader deemed it an action ex contractu. Courts will be persuaded but are not controlled by the construction which the parties themselves placed upon their own pleadings. If damage was sustained by reason of the attachment, that is a matter which cannot be considered in this action. The attachment was at all times subject to dismissal and the amendments made in the pleadings did not validate the writ. Since the hops were not sold and converted into money by the defendants the plaintiff did not have a cause for money had and received, although under the weight of authority the wrongful disposal of the hops created an implied obligation to pay plaintiff the reasonable value thereof: 1 C. J. 1035; Cooley on Torts (4th Ed.), § 61, p. 178. There is no inconsistency between the first action as alleged in the original complaint and the one upon which the cause was tried under the allegations of the second amended complaint. The remedy of the plaintiff was determined and fixed by the theory which it selected when the action was commenced and that was one which sounded in tort. See the well reasoned case of *Babcock-Cornish Co. v. Urquhart,* 53 Wash. 168 (101 P. 713). We conclude that the plea of estoppel is of no avail and that plaintiff is not precluded from maintaining this action.

In view of the conclusion that the only issue to submit to the jury is one of damages, it is not deemed necessary to consider the other assignments of error.

The judgment of the lower court is reversed and the cause remanded with directions to proceed not inconsistent with this opinion.

BEAN, C. J., BROWN and CAMPBELL, JJ., concur.