Argued March 31, affirmed May 7, 1953

# JESSE ET UX. *v.* BIRCHELL ET UX. and SCROGGIN ET AL.

257 P. 2d 255

*R. S. Kreason,* of Dallas, argued the cause and filed a brief for appellants.

*Philip Hayter* and *Kenneth E. Shetterly,* of Dallas, argued the cause and filed a brief for respondents.

Before LATOURETTE, Chief Justice, and ROSSMAN, LUSK, TOOZE and PERRY, Justices.

TOOZE, J.

This is a suit to foreclose a real estate mortgage, instituted by Fred F. Jesse and Dorothy A. Jesse, his wife, as plaintiffs, against Jack W. Birchell and Ardis O. Birchell, his wife, Frances M. Scroggin and Alladeen Scroggin Byrkit, as joint executrices of the estate of T. J. Scroggin, deceased, Frances M. Scroggin, Alladeen Scroggin Byrkit, and G. Palmer Byrkit, her husband, as defendants. A decree was entered foreclosing the mortgage. Defendants Frances M. Scroggin and Alladeen Scroggin Byrkit, as joint executrices

of the estate of T. J. Scroggin, deceased, Frances M. Scroggin, Alladeen Scroggin Byrkit, and G. Palmer Byrkit appeal.

Prior to and on June 26, 1948, B. E. Archer and Elsie Archer, his wife, were the owners of the tract of real property located in Polk county, Oregon, involved in this suit. On June 28, 1948, the Archers sold and conveyed said premises to plaintiffs Fred F. Jesse and Dorothy A. Jesse, his wife. As a part of the purchase price for said land, plaintiffs executed and delivered to the Archers their promissory note for the sum of $10,900, payable to B. E. Archer or Elsie Archer. On the same day, for the purpose of securing the payment of said promissory note, plaintiffs executed and delivered to the Archers their certain indenture of mortgage covering said premises.

On June 15, 1949, plaintiffs sold and conveyed said property to defendants Jack W. Birchell and Ardis O. Birchell, his wife, subject to the aforesaid mortgage indebtedness to the Archers, which indebtedness the said Birchells assumed and agreed to pay.

The defendants Birchell, on June 29, 1949, executed and delivered to plaintiffs their certain indenture of mortgage covering said premises, to secure the payment of a promissory note executed by them in the principal sum of $2,700, dated June 29, 1949, and payable to the order of plaintiffs. This mortgage forms the basis of the foreclosure suit now under consideration.

On April 19, 1950, Elsie M. Follett (Archer) commenced suit to foreclose the first mortgage lien on said premises. The plaintiffs in the instant suit, Fred F. Jesse and Dorothy A. Jesse, together with Jack W. Birchell and Ardis O. Birchell, his wife, the owners

of the property, and United States National Bank of Portland (Oregon), were named as parties defendant in said suit. The plaintiffs herein, as defendants in that suit, filed a demurrer to the complaint. The demurrer was overruled, and said defendants did not plead further. However, a stipulation was entered into between the plaintiff Follett and said defendants, by which it was agreed that the plaintiff would not take a deficiency judgment against the defendants Jesse, inasmuch as the mortgage involved was a purchase price mortgage.

On August 16, 1950, while the above suit was pending, the defendants Birchell sold and conveyed the property to one T. J. Scroggin, now deceased, subject to the Archer mortgage indebtedness, which Scroggin assumed and agreed to pay.

On August 28, 1950, Elsie M. Follett assigned the mortgage (that involved in the foreclosure suit) to Otto W. Heider, and on November 21, 1950, Heider assigned it to the said T. J. Scroggin.

On September 19, 1950, all the parties to the foreclosure suit entered into a written stipulation for the dismissal thereof, and, based upon that stipulation, an order was entered by the court on October 3, 1950, dismissing the proceeding.

In the meantime and on July 12, 1950, the plaintiffs in the instant suit commenced an action at law against the defendants Birchell to recover on the $2,700 promissory note above mentioned. In that action plaintiffs prepared and filed their affidavit for attachment, together with an undertaking on attachment. A writ of attachment was issued and delivered to the sheriff of Yamhill county for execution. The sheriff served a garnishee notice upon Sheridan Grain Company, but

"found nothing". No property of defendants in that action was attached. The defendants Birchell filed a demurrer to the complaint. No action was taken on the demurrer, and no answer was filed. On September 20, 1950, plaintiffs filed their motion to quash the writ of attachment and to dismiss the action without prejudice. On October 3, 1950, an order of the court dated September 29, 1950, was entered, quashing the writ of attachment and discharging the undertaking; on the same day a further order was entered dismissing the action "without prejudice against the commencement or prosecution of any other suit or action based upon the cause alleged in the complaint." In short, plaintiffs took an order of voluntary nonsuit.

It is evident that plaintiff's mortgage, as a second mortgage lien upon the property in question, had little, if any, value as security, so long as the Archer mortgage lien, as a first and prior lien, was in full force and effect. In their affidavit for attachment in the law action, among other things, plaintiffs alleged as to the indebtedness due from the Birchells: "that payment of the same has been secured by a mortgage upon real property, but such security has been rendered nugatory by the act of said defendants."

At the time the instant suit was commenced by plaintiffs, their mortgage lien, if a valid subsisting lien in the light of the foregoing facts, was a first lien upon the premises and, therefore, a valuable lien. In the absence of pleadings and evidence to the contrary, the presumption is that when the Archer mortgage (first mortgage) was assigned to T. J. Scroggin, the then owner of the premises, the two interests merged, and that mortgage ceased to be a subsisting lien. 59 CJS 523, Mortgages, § 367.

There is no dispute between the parties as to the facts. By their affirmative answer, the appealing defendants set forth but one defense to plaintiffs' complaint for foreclosure. After alleging the proceedings in the law action brought by plaintiffs against the Birchells to recover on said promissory note, the answering defendants allege:

"* * * and on or about the 10th day of August, 1950, the said Fred F. Jesse filed of record in said law action his affidavit for an attachment, stating among other things in said affidavit that the said note had been secured by a mortgage upon real property, but such security had been rendered nugatory by the act of the defendants and that the sum for which this attachment is asked is an actual, bona fide debt."

The defendants then allege the issuance of the writ of attachment and the facts respecting the purchase of the real property by T. J. Scroggin, now deceased. They then aver:

"* * * That by reason thereof defendants allege that plaintiffs herein, by virtue of the affidavit and writ of attachment issued out of this Court in the aforesaid law action of Jesse and wife v. Birchell and wife, Polk County Circuit Court Case No. 11587, *made an election of one of two inconsistent remedies and should be barred from now claiming that they did not waive the lien of their note* by cause [sic] a writ of attachment to be issued after waiving the lien on the real property described in paragraph VI of plaintiffs' complaint." (Italics ours.)

Defendants contend that by filing the affidavit for attachment in the law action, plaintiffs waived their mortgage lien, made an election of one of what they claim were inconsistent remedies, and are, therefore, barred from prosecuting this suit to foreclose.

Section 7-201, OCLA, as amended by ch 183, Oregon Laws 1941, provides in part:

"The plaintiff, at the time of issuing the summons, or any time afterwards, may have the property of the defendant attached, as security for the satisfaction of any judgment that may be recovered * * * in the following cases:

"1. In an action upon a contract, express or implied, for the direct payment of money, and which is not secured by mortgage, lien or pledge upon real or personal property, *or if so secured, when such security has been rendered nugatory by the act of the defendant."* (Italics ours.)

Section 7-202, OCLA, provides:

"A writ of attachment shall be issued by the clerk of the court * * * whenever plaintiff * * * shall make and file an affidavit showing: * * * (1) that the payment of the same has not been secured by any mortgage, lien or pledge upon real or personal property; or (2) that the same was secured by a mortgage, lien or pledge, as the case may be, but that such security has been rendered nugatory by the act of the defendant; * * *."

■ An attachment is a provisional remedy which is granted to the plaintiff in a law action and enables him to have the property of the defendant attached as security for the satisfaction of any judgment that he may recover. It is an auxiliary proceeding; that is, auxiliary to the main action. A judgment in the principal action in favor of defendant, or a dismissal of the action by a judgment of voluntary or involuntary nonsuit, dissolves the attachment and terminates the lien. *Nichols v. Ingram,* 75 Or 439, 444, 146 P 988; *Bank of Colfax v. Richardson,* 34 Or 518, 54 P 359, 75 Am St Rep 664; *Fischer v. Gaither,* 32 Or 161, 167, 51 P 736.

■ It is a firmly established principle of law in this state, as defendants maintain, that an election of one of two inconsistent remedies is a bar to the prosecution of the other. In *Bank of Calif. Nat. Ass'n v. Schmaltz,* 139 Or 163, 170, 9 P2d 112, this court said:

> "* * * An election of one of two such inconsistent remedies [one on tort, the other upon an implied contract] is a bar to the other. In this jurisdiction it seems to be well settled that an election is made by the commencement of the action. In other words, this is considered such a decisive step in the selection of the remedy that the party will not thereafter be heard to assert one which is inconsistent therewith * * *."

Also see *Jaloff v. United Auto Indemnity Exch.,* 120 Or 381, 387, 250 P 717; 18 Am Jur 129, Election of Remedies, § 3.

But the rule stated is applicable only when the two remedies are inconsistent with each other. The rule is not applicable where plaintiff has two coexisting remedies, with the right and privilege of choosing either mode of redress.

In *Union Trust Co. of Spokane v. Wiseman,* 10 F2d 558, it appears that plaintiff held a note for $16,000, executed and delivered as a part of the purchase price of certain real property. At the time of the execution of the note, a mortgage was given back on the real property purchased to secure payment of the note. Plaintiff started to foreclose on the mortgage, but subsequently, on plaintiff's own motion, the foreclosure suit was dismissed. Plaintiff then commenced an action at law upon the note. Defendant set up the foreclosure suit and its dismissal as a bar to the action; he claimed that by commencing the foreclosure suit, plaintiff had made an election of remedies. The United States Dis-

trict Court of Oregon, speaking through the late Judge WOLVERTON, at page 559, said:

> "It is now obvious that the remedies here under discussion are not of such a nature that the adoption of the one was the negation or repudiation of the other. They, in other words, are not so inconsistent that the institution of the suit to foreclose was a disaffirmance of the right to sue upon the note. The plaintiff simply has two coexisting remedies, with the right and privilege of choosing either mode of redress; but, when he makes his choice, the act of doing so cannot, in view of the character of the remedies, be construed or held to be a negation or disaffirmance of the other. *So the remedies are not inconsistent in the sense that the adoption of the one will preclude resort to the other.* What would be the effect, if the one adopted were carried to final determination, must be ascertained by what has preceded in the discussion of the Oregon cases." (Italics ours.)

■ It must be kept in mind that plaintiffs herein did not carry the law action to final determination; they took a judgment of voluntary nonsuit. The action at law was dismissed, and the writ of attachment, issued as an auxiliary to that action, was quashed. The effect of the judgment of voluntary nonsuit was to leave plaintiffs exactly where they were before the law action was commenced.

In *Beals et al. v. Harrison,* 111 Or 147, 148, 222 P 736, suit was commenced to cancel a mortgage of record and to release the lien thereof upon the real property therein described. The mortgage was a purchase price mortgage. The complaint alleged that the defendant Harrison had instituted an action on the notes against the plaintiff Beals, "wholly ignoring and disregarding said mortgage." It was then averred: "That by the institution of said action and by electing

to sue upon said promissory notes alone, defendants waived the mortgage hereinbefore referred to and abandoned the same." A general demurrer to the complaint was overruled by the trial court. In reversing the trial court on the appeal and in sustaining the demurrer and dismissing the suit, this court said:

"In the excerpt from the complaint above set out, the only allegation of fact is the commencement of the action on the notes. All the rest is the plaintiff's conclusion of law and does not amount to an averment of fact. *For aught that appears in the complaint, the plaintiff in the action may have taken a judgment of voluntary nonsuit, leaving her exactly where she was before the action was commenced: Section 184, Or. L."* (Italics ours.)

Section 6-204, OCLA (§ 184, Oregon Laws), provides:

"When a judgment of nonsuit is given, the action is dismissed; but such judgment shall not have the effect to bar another action for the same cause."

In *Carroll v. Grande Ronde Elec. Co.,* 49 Or 477, 479, 90 P 903, the late Chief Justice ROBERT S. BEAN, in discussing the foregoing statute and its effects, said:

"* * * It is still nothing but a judgment of nonsuit, which has been likened to the blowing out of a candle, which a man, at his own pleasure, may light again, and which the statute declares shall not be a bar to another action for the same cause.'"

◼ The "cause" involved in this proceeding, as in the law action, is the recovery of the sum of money due plaintiffs upon the promissory note. Neither the foreclosure of the mortgage in this suit nor the issuance of a writ of attachment in the law action constituted the "cause" of suit or action. They are but aids to

assist plaintiffs in the accomplishment of the desired end result; that is, the collection of the money due them. This is pointed out quite clearly in *Kansas City Live Stock Commission Co. v. Bank of Hamlin,* 79 Kan 761, 101 P 617, 618, where the court said:

"The only question presented is whether or not the holder of a chattel mortgage can proceed by attachment to collect his debt, without waiving the mortgage security. It is elementary that two remedies which are inconsistent with each other cannot be invoked at the same time. 7 Encycl. of Pl. & Pr. 364; 15 Cyc. 262; Plow Co. v. Rogers, 53 Kan. 743, 37 Pac. 111, 42 Am. St. Rep. 317; City of Larned v. Jordan, 55 Kan. 124, 39 Pac. 1030; Bank v. Bank, 57 Kan. 115, 45 Pac. 79; Bank v. Haskell Co., 61 Kan. 785, 60 Pac. 1062. It is equally elementary that all consistent remedies are freely open to the use of the litigant. This narrows the question to whether the two remedies here involved are inconsistent with each other or not. The inconsistency which the rule is intended to prevent is one which requires the litigant to insist in one case upon that which he denies in another; * * *. * * * If, on the other hand, a vendor of property holds a note of the vendee for the purchase price of the property sold, which note is secured by mortgage, and the vendee makes default in payment of the note, the vendor may pursue any or all of the remedies given by law for the collection of a debt. He may commence an action to recover judgment upon the note, and foreclose the mortgage; for sufficient cause he may also attach any property of the defendant *not included in the mortgage;* he may garnishee any other property or money which the debtor has in the possession of another; and he may also, after judgment, levy an execution upon any property of the defendant not otherwise taken, which may be discovered. These remedies are not inconsistent with each other; *they are all used for the purpose of enforcing the same right, and all*

*aid in the accomplishment of that end, without conflicting with each other.''* (Italics ours.)

We are not required at this time to decide what the situation would have been had plaintiffs attached the mortgaged property in the law action. We will meet that question when it is presented. As before observed, plaintiffs did not attach anything in the law action.

■ We are of the opinion that the issues in this case are settled by the decision of this court in *Weatherly v. Hochfeld,* 133 Or 136, 139, 286 P 588. The trial court based its decree of foreclosure in this suit upon that case, and we think properly so. In the Weatherly case the late Justice BELT, in speaking for the court, stated the issue thus:

"Did plaintiff, in bringing an action on the notes, waive the security under the chattel mortgage?"

The court then went on to say:

"At common law the mortgagee had the concurrent remedies of suing in equity to foreclose the mortgage and of bringing an action at law on the debt: 42 C.J. 84. As stated in Jones on Mortgages (8th Ed.), § 1565:

" 'Where there is no prohibition by statute the mortgagee may pursue all his remedies concurrently or successively. He may at the same time sue the mortgagor in an action at law on the note * * * and may maintain * * * a bill in equity to foreclose the mortgage.'

"In what way is the common law rule affected by our statute? Or. L., § 429 [§ 9-508, OCLA], provides:

" 'During the pendency of an action at law for the recovery of a debt secured by any lien mentioned in section 422, a suit cannot be maintained for the foreclosure of such lien, nor there--

after, unless judgment be given in such action that the plaintiff recover such debt or some part thereof, and an execution thereon against the property of the defendant in the judgment is returned unsatisfied in whole or in part.'

"It is certain that no suit could be maintained to foreclose the mortgage during the pendency of the action. If the action was, however, prosecuted to judgment and execution returned unsatisfied in whole or in part, the mortgagee could then look to his specific lien. In bringing an action at law and obtaining judgment, a general lien may be acquired on all of the property of the judgment creditor not exempt from execution. By so acting can it be said that he thereby waives his specific lien of the chattel mortgage? The whole doctrine of waiver is based upon the theory that the respective liens are essentially different and cannot co-exist: Stein v. McAuley, 147 Iowa 630 (125 N.W. 336, 27 L.R.A. (N.S.) 692, 140 Am. St. Rep. 332). *In the instant case it should be borne in mind that the action was dismissed on motion of plaintiff for a nonsuit.* * * *

"* * * * *

"Beals v. Harrison, supra [111 Or 147, 222 P 736], is authority for the proposition that there was no waiver of the mortgage security. No authority has been cited and we have been unable, after diligent search, to find any which holds to the contrary *where judgment of voluntary nonsuit was granted.* Attention has been directed to the broad and, in the opinion of the writer, inaccurate statement of this court in Hawkins v. Fuller, 116 Or. 434 (240 P. 549), wherein it was said:

"'* * * when one brings an action at law upon the note, he is deemed to have waived the mortgage.'

"The conclusion reached in that case was undoubtedly sound, but such statement can not be followed as a hard and fast rule, for to do so would

be in direct violation of Or. L., § 429. *Certainly the mere commencement of such an action does not constitute a waiver of security.* The effect of the statute is to hold a concurrent remedy in equity in abeyance so long as an action at law is pending." (Italics ours.)

The court then called attention to the fact that there is a conflict among the authorities in other jurisdictions as to the effect that should be given to an attachment of the mortgaged property in the action on the notes, and explained to some extent the apparent reasons for the conflict. However, inasmuch as no attachment was involved in the Weatherly case, we reserved that question for decision when it arises.

We do hold in this case that the mere filing of an affidavit for attachment and the issuance of the writ, in the law action upon the note, did not constitute a waiver of the mortgage lien, nor did it amount to an election of one of two inconsistent remedies, and hence does not operate as a bar to the prosecution of this suit.

The decree is affirmed. Neither party shall recover costs.